IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, successor to National City Bank of the Midwest | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 11 CV 4370 |
| v. | ) ) | Assigned Judge: Hon. Robert M. Dow, Jr. |
| SECRET SALON & SPA CORP., DOROTA BIALAS and 7148-58 W. ADDISON AVENUE CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) ) ) ) | Magistrate Judge: Hon. Michael T. Mason |
| Defendants. | ) | |

**AMENDED ORDER APPOINTING SPECIAL COMMISSIONER**

THIS CAUSE coming on to be heard on Plaintiff's Motion to Appoint Special Commissioner, due notice having been served and the Court being fully advised in the premises

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion is granted and Key Auctioneers and Valle Realty, licensed auctioneers, are appointed as Special Commissioners to sell the real estate that is the subject of the above-captioned cause.

2. The sale shall be conducted in accordance with the Terms and Conditions for Special Commissioners Sale of Real Estate by Auction Company attached hereto as Exhibit A and by express reference made a part hereof.

ENTER:

_____
Judge

Date: _October 31_, 20_11_

Thomas J. Dillon (ARDC#3124223)
t.dillon@mcdillaw.com
Wendy Kaleta Skrobin (ARDC#6226119)
w.skrobin@mcdillaw.com
Timothy J. Somen (ARDC#6279438)
t.somen@mcdillaw.com
McFadden & Dillon, P.C.
120 S. LaSalle Street, Suite 1335
Chicago, Illinois 60603
(312) 201-8300

# EXHIBIT A

# TERMS AND CONDITIONS FOR SPECIAL COMMISSIONERS SALE OF REAL ESTATE BY AUCTION COMPANY

1. The real property located at ___7152 West Addison Street, Chicago IL  as referenced  Case: 11 CV4370___ ("Property") shall be sold through the services of Key Auctions LLC, ("Key") as Special Commissioner, who shall undertake all steps normally required by statute and by the Court's Judgment to advertise and post notices for the sale.

2. Key will use its best efforts to advertise and market the Property for sale in a manner calculated to bring the highest and best price at the sale.

3. Key will incur expenses necessary for advertising and other aspects of the sale, which will be reimbursed from the proceeds of the sale in an amount not to exceed ___three thousand six hundred dollars  ($3,600).___

4. Key is authorized to charge and retain a Buyer Premium of ten percent (10%) from the highest bidder. Said Buyer Premium will be paid by the highest bidder directly to Key and shall be in addition to the amount of the winning bid entered by the highest bidder. No commission shall be charged to ___PNC Bank, NA___ ("Bank") by Key.

5. The sale shall be held at the Property on a date chosen by Key.

6. In order to facilitate the advertising and marketing of the Property for sale, Key shall have the right to place signs on the Property, and to access the Property to show it to potential buyers. This access shall be as unobtrusive as possible to any tenant and its operations. Upon request by Key, the Sheriff shall provide assistance using the minimum force necessary to gain access to the Property and to any building or enclosure located thereon. If the property is vacant and no other keys are available or provided by the current title holder, Key shall have the right to change locks as necessary to gain access to the Property.

7. Key shall assume no liability for personal injury to any potential buyer or sale attendee before, during, or after the auction, nor shall Key assume any liability for loss by fire, theft, destruction, damage or other calamity to the Property or any part of it.

8. Bidding shall be made without conditions and with no contingencies of any kind. The Property shall be sold "AS IS AND WHERE IS" with no representations or warranties of any kind being made to the buyer. Key shall not be held to answer to any claims whatsoever concerning the condition and/or title to the Property.

9. The highest bidder shall deliver to Key at the time and place of the sale a cashier's check or other certified funds payable to Key in the amount of ten thousand dollars ($10,000) which shall be a nonrefundable "earnest money" deposit for the purchase of the Property, and shall thereupon execute a purchase agreement for the Property immediately following the delivery of the deposit money.

10. Key shall see that the following take place to finalize the transfer of the Property:
    a. Within thirty (30) days after the date of sale, a cashier's check or other certified funds shall be delivered by buyer to Key for the balance of the bid price plus buyer premium with credit given for earnest money previously paid;

b. The Judicial Deed along with fees and other such documents as may be required by the Recorder and/or other officials of Cook County, Illinois ("County") are provided by Key so that the Judicial Deed will be recorded in the public record;

c. The recorded Judicial Deed shall be delivered by the Bank or its designated agent to the buyer; and

d. Subsequent to the entry by the Court of an order approving sale, Key shall remit the net proceeds of the sale to the Bank after deducting from the gross purchase money any amounts due Key, including advertising expenses as provided in Paragraph 3, buyer's premium, recording costs and auditor fees. Payment to Key for its expenses and commissions shall be made prior to the payment of any other item, fee, or expense.

11. If the buyer fails to timely deliver the balance of the sale price to Key, then:

a. The buyer's deposit monies shall be forfeited and applied first to any costs or expenses of the Bank in connection with the sale; and the remainder shall be split equally between Key as reimbursement for its costs and fees, and the Bank as payment towards the balance of the Judgment, and;

b. The sale shall then be reset under the same terms as herein provided; except Key is authorized to sell the Property to a backup bidder from the original sale if in the judgment of Key the price the backup bidder is willing to pay is a greater amount than a subsequent sale is likely to realize after payment of advertising and other costs for the subsequent sale.

12. Once a sale date is set, it shall not be cancelled unless Key gives its express consent, or unless the Court orders the sale to be cancelled. If a cancellation does occur, then Key shall be permitted to recover its expenses from the advertisement and marketing of the first sale out of the proceeds of the reset sale in addition to the expenses and fee it shall be paid as provided for in paragraphs 2 and 3 above.

13. The buyer shall have rights to possession and title to the Property upon buyer's delivery of the full bid price to Key and delivery of the Judicial Deed to buyer.

14. The buyer shall be responsible for the payment of all taxes and assessments for installments due and owing at the time of the sale and accrued subsequent thereto.

15. If the Bank makes the highest bid to purchase the Property at the sale using its judgment balance as a credit, then the Bank shall forthwith pay Key's expenses as set forth in paragraph 3 above, and a professional services fee of two thousand dollars ($2,000.00) for its efforts and services.